IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BRIANNA DAY, §
§
    Plaintiff, §
§
v. § Civil Action No. 3:24-CV-1259-N
§
DALLAS COLLEGE, §
§
    Defendant. §

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant Dallas College's motion for summary judgment [15]. For the following reasons, the Court partially grants and partially denies the motion.

**I. ORIGINS OF THE MOTION**

This is an employment dispute. Plaintiff Brianna Day is a biology professor, formally employed by Dallas College ("the College") from August 2015 to August 15, 2021. Pl.'s Compl. ¶ 3.2. During this time, she represented other faculty members as their authorized faculty representative in grievances they filed against the College, including complaints of discrimination based on ethnicity, sex, and age. *Id*. Day also helped establish a chapter of the American Association of University Professors ("AAUP") at Dallas College in May 2020. *Id*. ¶ 3.9.

Day alleges that Dallas College retaliated against her for her efforts to protect faculty interests by serving as the AAUP president, assisting with grievances, and proposing the formation of a faculty senate. *Id*. She alleges that administrators and faculty members of the College "disseminated the threat that Plaintiff's efforts to create a faculty

MEMORANDUM OPINION AND ORDER – PAGE 1

senate . . . would lead to reprisals against the entire faculty." *Id.* ¶ 3.11. Day asserts that the "coordinated attacks" created such a hostile work environment that she was forced to resign her position as a full-time professor on August 2, 2021, effective August 15, 2021. *Id.* ¶¶ 3.12, 3.13.

After she resigned from her full-time professor position, Day requested to teach three of her previously scheduled online classes for the Fall 2021 semester as an adjunct professor. *Id.* ¶ 3.15. Amy Vance, chair of the Biology department, agreed and emailed Day to confirm that the Biology department would change Day's status from full-time to adjunct so that she could teach the scheduled courses. *Id.* ¶ 3.16. However, on August 17, 2021, Day discovered that she no longer had access to any of her adjunct online classes without explanation. *Id.* ¶ 3.19. Day subsequently emailed Sherri Enright, the College's Chief Human Resources ("HR") officer on August 27, 2021, that she would file a grievance against Dallas College for retaliation due to her representation of other faculty members in their grievances against Dallas College. *Id.* ¶ 3.24.

On August 30, Enright responded to Day's email denying that Day's removal from adjunct classes was retaliatory and that HR had not received any paperwork regarding Day's request to teach as an adjunct professor, despite Day's previous agreement with Vance. *Id.* ¶ 3:25.

Day filed an EEOC complaint and the agency found "there is a reasonable cause to conclude that [Dallas College] violated Title VII." Pl.'s Compl. ¶ 3.35. She brings two causes of action against Dallas College: (1) employer retaliation under 42 U.S.C. § 2000e-

MEMORANDUM OPINION AND ORDER – PAGE 2

3(a) and (2) a state law claim for breach of contract and constructive discharge.[1]  Dallas College filed this motion for summary judgment and objected to Day's declaration as competent summary judgment evidence.

## II.  THE COURT PARTIALLY STRIKES DAY'S DECLARATION

The Court begins with addressing the evidentiary objections.  Dallas College objects to Day's declaration "on the basis that many statements are conclusory, lacking in personal knowledge, and inadmissible hearsay—in addition to being irrelevant and immaterial." Def.'s Reply [3].  Dallas College makes each of its objections pursuant to Federal Rules of Civil Procedure 602 and 802.  *Id*.  Rule 56 states that an "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  FED R. CIV. P. 56(c)(4).  Courts may consider evidence at the summary judgment stage if that evidence contains facts that would be admissible at trial, "even if that evidence is unsworn or in a presently inadmissible form."  *Blueitt v. Crestbrook Ins. Co.*, 643 F. Supp. 3d 651, 654 (N.D. Tex. 2022).  The Fifth Circuit has emphasized that "materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'"  *LSR Consulting, LLC v. Wells Fargo Bank*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis original) (citing FED. R. CIV. PRO. 56(c)).

---

[1] Day alleged a third cause of action for violation of the First Amendment pursuant to 42 U.S.C. § 1983 but later dropped the claim as time-barred.  Pl.'s Resp. 2 [20].

After reviewing Day's declaration and Dallas College's objections, the Court finds that certain statements in the declaration are not competent summary judgment evidence because they are hearsay or Day lacks personal knowledge of them.

First, Day offered a comment based on information relayed to her by unidentified third party. *See* Day Decl. ¶ 30 ("having heard that Hinckley was a member of" Antifa). A statement made by an unidentified witness is inadmissible hearsay and not proper summary judgment evidence. *Miller v. Michaels Stores Inc.*, 2023 WL 3938000, at *4 (E.D. La. 2023). Furthermore, the statement cannot be presented in an admissible form at trial because Day did not identify the speaker and it does not otherwise qualify for an exception under Federal Rule of Evidence 803. Accordingly, the Court does not consider this statement in the summary judgment analysis.

Next, Day presented statements about another Dallas College professor, Matt Hinckley, who she alleged posted a disparaging post about her on Facebook without naming her in the post. *See* Day Decl. ¶ 26 ("Hinckley's comments regarding me . . . were knowingly false and thus posted with the intention of turning colleagues against me and ruining my reputation."); *see also* Day Decl. ¶ 27 ("Hinckley's deliberate defamation of me on Facebook was humiliating, devastating, and intentional."). Fifth Circuit precedent allows courts to "reasonably infer[]" personal knowledge and competence from the declarant's "positions and the nature of their participation in the matters to which they swore." *Rios v. Tex. Christian Univ.*, 347 F.R.D. 486 (N.D. Tex. 2024) (quoting *DIRECTTV Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005)). In *Rios*, the Fifth Circuit concluded that a declarant's position as a supervisor in the chain of command above the plaintiff allowed

MEMORANDUM OPINION AND ORDER – PAGE 4

him to make acceptable inferences and opinions about the plaintiff's performance and treatment as an employee. *Id*. at 489. In contrast, Day and Hinckley were colleagues. Hinckley's activity on his personal social media account is beyond the scope of their professional relationship. Thus, Day lacks the personal observations and experiences necessary to infer Hinckley's intentions regarding his Facebook post. The Court concludes that these statements would not be admissible at trial, and does not consider them in the summary judgment analysis.

The Court determines that the remainder of Day's declaration is relevant and admissible because it contains facts capable of being admitted at trial. Specifically, Day could testify directly to her own personal knowledge and call witnesses to testify to other alleged events.

### III. SUMMARY JUDGMENT LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the

MEMORANDUM OPINION AND ORDER – PAGE 5

nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87(1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Bargher v. White*, 928 F.3d 439, 444 (5th Cir. 2019) (citation omitted). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### IV. THE COURT GRANTS THE MOTION FOR SUMMARY JUDGMENT ON DAY'S BREACH OF CONTRACT CLAIM

The Court concludes that Day did not establish a prima facie case for breach of contract. Day alleges that Dallas College breached her employment contract by violating its own internal policies regarding discrimination and harassment. Pl.'s Resp. 23. She further alleges that Dallas College breached her employment contract and its own policy

by retaliating against her for the grievances and by interfering with her expressive activities. *Id*. 26.

"As a general rule employee handbooks and policy manuals constitute general guidelines in the employer/employee relationship and do not create implied contracts between the employer and employee." *Brown v. Sabre, Inc.*, 173 S.W.3d 581, 585-86 (Tex. App. — Fort Worth 2005, no pet.) (collecting cases); *Aiello v. United Air Lines, Inc.*, 818 F.2d 1196, 1198 (5th Cir. 1987); *Young-Trezant v. Lone Star Coll. Sys.*, 2024 WL 2794483, at *2 (5th Cir. 2024) (per curiam) ("Employer policies do not qualify as contracts, and their 'breaches' do not create causes of action under Texas law." (internal citation omitted)).

Moreover, employment in Texas is presumed to be at-will. *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). For an employer to modify an employee's at-will status, the employer must "unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Id.*; *cf. Okoli v. Christus Good Sheperd Med. Center-Longview.*, 2025 WL 4695213 (E.D. Tex. 2025) (concluding that Plaintiff had no breach of contract claim against her employer because, while the contract clearly bound her to the employer's policy, there was no language in her employment contract "clearly showing the parties intended for the Grievance and Due Process Policy to become a part of the employment agreement" and equally bind the employer).

Here, Day does not make a showing that Dallas College clearly intended to be bound to the internal policies referenced in Day's employment contract. She argues that Dallas College expressed an intent to be bound to the terms of its internal policies because Day's

MEMORANDUM OPINION AND ORDER – PAGE 7

employment contract with the college states that "the relationship between the Instructor and the District is governed by state and federal laws and regulations and approved policies, regulations, and procedures of the District . . . during the term of this Contract."  Pl.'s Resp. 24-25.  However, the quoted language does not contain an express statement that Dallas College intended to be contractually bound by its policies.

The employment contract language is more properly read as a statement that Day, as an instructor, was bound to Dallas College's policies as a condition of employment.  This conclusion is further supported by the sentence that follows: "By signing this Contract, Instructor agrees to abide by and comply with District Policies and all applicable local, state and federal law and regulations."  Def.'s App. 106.  Thus, the Court grants the motion for summary judgment on this claim.

### V. THE COURT DENIES THE MOTION FOR SUMMARY JUDGMENT ON DAY'S RETALIATION CLAIM

Next, the Court concludes that there is a genuine dispute of fact regarding Day's retaliation claim.  Title VII makes it unlawful for an employer to discriminate against an employee because she has opposed an unlawful employment practice or participated in protected activity.  *See* 42 U.S.C. § 2000e-3(a).  Day claims that Dallas College retaliated against her based on her representation of faculty members in their grievances and other Title VII protected activity.  Pl.'s Resp. 26.  She does not provide direct evidence of discrimination, so the Court applies the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*.  411 U.S. 792 (1973).

First, Day must establish a prima facie case of discrimination. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). If she can do so, Dallas College then "must articulate a legitimate, non-discriminatory reason" for the adverse employment action. *Id.* If Dallas College meets this burden of production, then the burden finally shifts back to Day to "offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Id.* at 412. The "burden of persuasion remains with the employee throughout." *Saketkoo v. Adm'rs of Tulane Ed. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022) (citation omitted).

### *A.  Day Established a Prima Facie Case of Retaliation*

To establish a prima facie claim of retaliation, a plaintiff must establish that (1) she engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). An employee engages in a protected activity when he "has opposed any practice made an unlawful employment practice by" Title VII or "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VI. 42 U.S.C. § 2000e-3(a); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cty.,* 555 U.S. 271, 274 (2009) (noting that section 2000e-3(a) has an "opposition clause" and a "participation clause"). Additionally, under Title VII, plaintiffs must exhaust

MEMORANDUM OPINION AND ORDER – PAGE 9

their administrative remedies by filing a charge with the EEOC before filing suit. *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990).

The Court determines that here, Day participated in protected activity under Title VII by filing grievances on her own behalf and by representing other faculty members in grievances they filed against Dallas College for complaints of discrimination based on ethnicity, sex, and age. Pl.'s Resp. 2; *Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) (per curiam) ("An employee that files an internal complaint of discrimination engages in a protected activity." (citing *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001)).

The Court also concludes that Day suffered an adverse employment action. "The term 'adverse employment action' in the context of retaliation claims is interpreted to mean any action a reasonable employee would find materially adverse so as to discourage the making or supporting of a charge of discrimination." *Garza v. Mary Kay, Inc.*, 2010 WL 3260175 at \*5 (N.D. Tex. 2010). Dallas College administrators approved Day's request to teach her scheduled online courses during the Fall 2021 semester as an adjunct professor. Def.'s Br. 10-11; *see also* Pl.'s Resp. 4. Day was ultimately not allowed to do so. Pl.'s Resp. 4. Thus, Dallas College's failure to assign Day adjunct courses effectively terminated Day's employment. Termination of employment is an action that would discourage a reasonable employee from "making or supporting a charge of discrimination." *Garza*, 2010 WL 3260175 at \*5.

Finally, the Court determines that a plausible causal link exists between Day's protected activity and the adverse employment action. Chief HR Officer Enright testified

MEMORANDUM OPINION AND ORDER – PAGE 10

that she considered Day's retaliation allegations and grievances when determining how to respond to Day's inquiry about her adjunct status.  Enright Dep. 81-82.  When asked how the HR department would respond if an employee complained about being removed from the College's scheduling system, Enright answered that Day's situation specifically warranted legal intervention rather than a direct response to her inquiry.  *Id*. ("There was . . . specific circumstances around Ms. Day, including her very detailed statements alleging retaliation and grievances; that it would have been a best practice to involve our legal department.")  Thus, the Court concludes that Day established a prima facie case of retaliation in violation of Title VII.

### B.  Dallas College Articulated a Legitimate, Non-Discriminatory Reason for Denying Day's Adjunct Status

Because Day produced sufficient evidence to establish her prima facie case, the burden shifts to Dallas College to "articulate some legitimate, non-retaliatory reason" for the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802.  Dallas College claims that Day was inadvertently "dropped out" of Dallas College's new centralized scheduling system because of the timing of her resignation and subsequent request to teach Fall 2021 courses.  *See* Def.'s Br. 10-11.  Day's resignation became effective approximately a week before the Fall semester began "when everything was very chaotic" due to complications from the new scheduling system.  *Id*.  The Court holds that this administrative error is a legitimate, nondiscriminatory reason for the adverse employment action.  *Johnson v. Johnson*, 923 F. Supp. 2d 984 (S.D. Tex. 2013) (finding that

MEMORANDUM OPINION AND ORDER – PAGE 11

"administrative errors or mistakes can be legitimate, nondiscriminatory reasons for an employer's actions.").

### C. Day Raises a Triable Issue of Pretext

Day claims that Dallas College's reason for failing to assign her adjunct classes is pretextual. Pl.'s Resp. 21. She may show pretext either (1) "through evidence of disparate treatment" or (2) "by showing that [Dallas College's] proffered explanation is false or unworthy of credence." *Jackson v. Cal W. Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "'An explanation is false or unworthy of credence,' and thus pretextual, 'if it is not the real reason for the adverse employment action.'" *Burton v. Freescale Semiconductor, Inc.,* 798 F.3d 222, 233 (5th Cir. 2015) (quoting *Laxton*, 333 F.3d at 578).

The Court determines that there is a genuine dispute of material facts as to whether the college's reasoning was pretextual. Here, Dallas College's proffered reason for the adverse employment action was an administrative error. Def.'s Br. 10-11. However, the college did not offer this explanation to Day, and she did not learn about it until Chief HR Officer Sherri Enright's deposition four years later. Pl.'s Resp. 18. Additionally, Day alleges that another full-time Biology professor at Dallas College, Joseph Malaer, resigned and requested to continue teaching his assigned courses as an adjunct faculty member two months after Day. Pl.'s Compl. ¶¶ 3.29-3.31. Malaer's request was honored in the Fall 2021 and Spring 2022 semesters. *Id*. Malaer ran into the same administrative error that caused Day to be removed from the system, but Biology department administrators and an HR employee corrected the error in time for Malaer to continue teaching that Fall. Pl's

MEMORANDUM OPINION AND ORDER – PAGE 12

Resp. 12; *see also* Pl.'s App. 83.   Dallas College did not adequately explain this discrepancy.   It argues that HR was able to identify and correct Malaer's administrative error before his resignation became effective, whereas Day's issue was only discovered after her resignation was effective.   Def.'s Reply 11.

Additionally, in October 2021, Day reached out to Vance a second time, seeking available adjunct courses after administrators resolved the issue in the scheduling system for Malaer.   Pl.'s Resp. 12.   The College still failed to assign adjunct classes to Day or explain why she was no longer allowed to teach.   Pl.'s Resp. 11-12.   Dallas College's failure to explain the differing outcomes between Day and Malaer raises a fact issue regarding pretext.

Thus, the Court concludes that there is a genuine dispute of material fact regarding the circumstances around Dallas College's failure to assign Day adjunct classes.   Because there is sufficient evidence to create a genuine issue of material fact as to whether Dallas College's proffered explanation was unworthy of credence and thus pretextual, the Court denies summary judgment on Day's retaliation claim.

### CONCLUSION

First, the Court sustains two of Dallas College's objections to Day's declaration. Then, the Court partially grants and partially denies Dallas College's motion for summary judgment.   The Court grants the College's motion with respect to Day's breach of contract claim but denies the motion as to Day's Title VII retaliation claim.

Signed July 6, 2026.

David C. Godbey
Senior United States District Judge